HAROLD V. BULL, trustee of Northern Biochemical Corporation, a bankrupt, appellant, v. HAROLD E. KISTNER, JR., appellee; HAROLD E. KISTNER, SR., et al., defendants.

No. 51627.

(Reported in 135 N.W.2d 545)

June 8, 1965.

T. M. Whicher of Whicher & Yaneff, of Sioux City, for plaintiff-appellant.

L. L. Corcoran, of Sibley, for defendant-appellee.

THORNTON, J.—This is a case of first impression. Plaintiff appeals from an order sustaining a special appearance of, and quashing service of notice on, defendant Harold E. Kistner, Jr.

Plaintiff is a trustee in bankruptcy. He brings this action against the above named defendant and others as stockholders, officers and directors of the bankrupt corporation asking a full and complete accounting of their profits and judgment therefor.

At the time of service, defendant Harold E. Kistner, Jr., was an inmate of the Federal Correctional Institution at Sandstone, Minnesota. Plaintiff obtained service on said defendant pursuant to rule 56(a), Rules of Civil Procedure, by leaving a

copy with his wife in Sheldon, Iowa. Rule 56, in pertinent part, provides:

"* * * Personal service may be made as follows:

"(a) Upon any individual * * *; or by serving, at his dwelling house or usual place of abode, * * *."

This rule supersedes our former statute, section 11060, paragraph 2, Code of Iowa, 1939, "* * * usual place of residence * * *." See Ruth & Clark v. Emery, 233 Iowa 1234, 11 N.W.2d 397.

The return of the deputy sheriff states: "* * * I served the same on the defendant H. E. Kistner, Jr., at his dwelling house or usual place of abode in the city of Sheldon in O'Brien County, State of Iowa, and which place was not a rooming house, hotel, club or apartment building, by there delivering a copy thereof to Mrs. Harold E. Kistner, Jr., a person residing therein who is at least eighteen years old."

Defendant's special appearance states said defendant "is presently an inmate of an institution in charge of the United States of America, and outside the State of Iowa", that notice was attempted as stated in the return, the service is void because so served and for the reason that it does not comply with the Rules of Civil Procedure. In an amendment thereto counsel for defendant attaches his affidavit wherein he states defendant Harold E. Kistner, Jr., "was at the time of the commencement of said action, is now, and has been continuously since prior to the time of the commencement of this action, an inmate of the Federal Correctional Institution at Sandstone, Minnesota, which is an institution which has been, and is, in charge of the United States of America."

I. Defendant in his printed argument concedes that prior to his confinement at Sandstone he had resided with his wife and family at Sheldon, Iowa.

The parties agree the question to be determined is what constituted the "dwelling house or usual place of abode" of defendant Harold E. Kistner, Jr., at the time of service. Was it his home in Sheldon? Was it the Federal Correctional Institution at Sandstone?

As presented, the question is one of law. Does the bare fact

of defendant's incarceration at Sandstone by the Federal Government, without further showing, change his usual place of abode and does the correctional institution become his usual place of abode? We think not.

In Bohland v. Smith, 7 F. R. D. 364, 365 (1947), the Federal District Court, in upholding a similar return of service under Federal Rule 4(d)(1) "by leaving copies thereof at his dwelling house or usual place of abode", said:

"The sole question involved is whether it can be said that his absence from his home, brought about by his incarceration, brings about a change in the usual place of abode of defendant. I am of the opinion that where one voluntarily establishes a place of abode or residence but is prevented from occupying it, by act of his sovereign or otherwise, his place of abode is not changed."

In 1836 the Supreme Court of Connecticut in Grant v. Dalliber, 11 Conn. 234, 237, in dealing with a statute providing writs of attachment must be served "by leaving with the person * * * or at his usual place of abode", held service at the dwelling house where defendant prisoner's wife and family lived and he had lived before his imprisonment was proper, the court, at page 238 of 11 Conn., said:

"Before his imprisonment, his usual place of abode was in Torrington, in the same dwelling house where the copy of the writ was left in service, where his family dwelt, and to which, as to his home, he returned, upon his enlargement from prison. He had never abandoned this, as his place of residence; he had left it, by constraint; he had acquired no new or other place of residence. The state's prison was not the place of his abode; it was the place of his punishment; and while there, he was absent from home.

"We think it may be said generally, that the place in which a married man's family resides, with his consent, and where he has voluntarily resided with them, as his home, and which he has never abandoned, may well be considered as the place of his abode, unless such residence has been, and was intended to be, temporary and for transient purposes. And such place of residence or usual abode, is not changed or abandoned, by a constrained removal, as by imprisonment."

In 1868 the Connecticut court in Dunn's Appeal, 35 Conn. 82, 84, 85, held a service on a prisoner was proper by leaving a copy with him at the jail. The statute required the summons to be served by copy left at the usual place of abode. The prisoner's former home had been sold by his trustee in insolvency. The court said:

"We think therefore, that the service was, under the circumstances, properly made by leaving a copy with him at the jail. True, this was the place of his imprisonment, and can, therefore, hardly be said to be his home."

In 1897 the Nebraska court in Walker v. Stevens, 52 Neb. 653, 72 N.W. 1038, held service on a prisoner by leaving a copy at the home he had occupied prior to his imprisonment was proper under a statute providing for such service at his usual place of residence.

It is the general rule a person's domicile or residence is not changed by his imprisonment. Cohen v. United States, 297 F.2d 760, 774 (1962); Shaffer v. Tepper, 127 F. Supp. 892, 894 (1955); 17A Am. Jur., Domicil, section 48, page 233; and 28 C. J. S., Domicile, section 12(7), page 29.

II. We agree with defendant "usual place of abode" is a more restrictive term than residence or domicile, but we do not agree it is so restrictive as to exclude entirely a consideration of volition.

Courts are not in agreement. 42 Am. Jur., Process, section 61, page 49; 72 C. J. S., Process, section 47, pages 1057–1059; Annotations, 127 A. L. R. 1267 and 46 A. L. R.2d 1239. It is repeatedly stated each case depends on its own facts.

It is true courts do consider the defendant's actions to determine his usual place of abode and state the inquiry is where he is actually living at the time of service. An example of this is found in the opinion of Chief Judge Stephenson of the Southern District of Iowa in Hysell v. Murray, 28 F. R. D. 584 (1961), where the defendant, a serviceman for 15 years, in an affidavit stated he considered Ottumwa as his permanent residence and he was a citizen of Iowa. The court, however, held because defendant was a married man living with his family in South Carolina where he was stationed at the time of service, his

father's home in Ottumwa was not his usual place of abode. Likewise the home which defendant had purchased and his family had lived in for a year but had been leased to others some three months before the purported service was held not to be his usual place of abode. Clearly a married man living elsewhere with his family cannot be said to have his usual place of abode at the home of his father. And when a married man rents his home in one city and moves with his family to a home in another city he cannot be said to have his usual place of abode in the rented house. Such acts involve volition.

Defendant cites Booth v. Crockett, 110 Utah 366, 173 P.2d 647. This case holds an 18-year-old serviceman no longer has his usual place of abode in his parents' home eight days after he enlisted in the United States Navy and departed for service in another state. Kurilla v. Roth, 132 N. J. Law 213, 217, 38 A.2d 862, 865, cited in the Booth case, holds in the case of a 25-year-old unmarried inductee, "Upon defendant's induction into the armed forces, his mother's home ceased instanter to be his place of abode." To like effect is Whetsel v. Gosnell, Del., 181 A.2d 91, where service was attempted on a midshipman attending the Naval Academy by leaving a copy at the home of his grandparents in Delaware where defendant had lived prior to his appointment to the academy.

 We do not think these authorities should be followed in the case of a married prisoner where the wife and family remain in the home occupied with him at the time he was imprisoned. Though there is a marked severance of his former activities in the home the bare fact of his imprisonment does not change his usual place of abode. The usual place of abode of a married man is prima facie the home where his wife and family reside. His actions and intentions in regard thereto are important considerations. Holtberg v. Bommersbach, 236 Minn. 335, 52 N.W.2d 766.

 III. Appellee urges notice as served here does not meet the fundamental requirement of due process in that it is not reasonably calculated to apprise him of the pendency of the action. He cites Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306, 70 S. Ct. 652, 94 L. Ed. 865. Mullane does not

touch the proposition here. Once it is determined service was made by leaving a copy with a proper person at defendant's usual place of abode, such service is uniformly upheld. Milliken v. Meyer, 311 U. S. 457, 462, 463, 61 S. Ct. 339, 342, 85 L. Ed. 278, 132 A. L. R. 1357.

■ Because a prisoner in a federal institution may be served by the official in charge, rule 56(d), Rules of Civil Procedure, in no way affects service under rule 56(a). Both are permissive.

The case is reversed and remanded for further proceedings. —Reversed and remanded.

All Justices concur.